UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH ANN FOX,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:17-cv-01663 CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.[1]

BACKGROUND

Plaintiff, born May 11, 1967, applied on July 15, 2013 for SSI, alleging disability beginning January 1, 2012. Administrative Transcript ("AT") 150-151. Plaintiff alleged she was unable to work due to knee pain, leg pain, and depression. AT 151. In a decision dated February

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to Title 28 U.S.C. §636(c)(1). ECF Nos. 7 and 8.

1

18, 2016, the ALJ determined that plaintiff was not disabled.[2] AT 16-25. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since July 16, 2013, the application date.
>
> 2. The claimant has the following severe impairments: status post right total knee, arthroplasty; left knee arthritis; and a major depressive disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

perform sedentary work, except she is limited to simple, repetitive tasks; should avoid concentrated exposure to fumes, odors, dust and gases; no work around hazards, such as heights and moving machinery; no extreme temperatures; no public contact; and only occasional, superficial contact with others.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on May 11, 1967, which is defined as a younger individual age 45-49 on the date the application was filed.

7. The claimant has at least a high-school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 15, 2013, the date the application was filed.

AT 18-25.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following error in finding plaintiff not disabled: The ALJ failed to properly evaluate the opinion of consultative psychologist Dr. Charles Odipo.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Plaintiff contends that the ALJ did not provide specific and legitimate reasons for discounting in part the opinion of Dr. Odipo, who conducted a mental status examination of plaintiff on February 15, 2014. AT 359-362. Plaintiff argues that if Dr. Odipo's opinion were properly credited, a finding of disability due to depression would be warranted.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at

4

830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In his February 2014 evaluation, Dr. Odipo noted that plaintiff "reports a history of depression" and "reports a history of suicidal ideation but no attempts." AT 359. She "has never taken psychiatric medication" but "continues to drink excessively to mask her depression." AT 359-360. As to activities of daily living, Dr. Odipo noted that plaintiff could take care of dressing, bathing, and personal hygiene; that she "is not able to pay bills but can handle cash appropriately"; that her relationships with friends and family were poor "since she isolates"; and that her typical day included light chores and managing her pain symptoms. AT 360. Dr. Odipo observed that plaintiff "was sad looking and she had crying spells when recalling her medical problems." AT 360. He assigned her a GAF of 60[3] and diagnosed her with Major Depressive Disorder and Alcohol Abuse on Axis I. AT 361.

In his functional assessment, Dr. Odipo found that plaintiff

> Is capable of managing her funds since she does not appear to have any significant cognitive problems.
>
> Is able to adequately perform one or two step simple repetitive tasks.
>
> Is not able to adequately perform complex tasks without

---

[3] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

5

> accommodations due to depressive and pain symptoms.
>
> She is deemed to be moderately impaired.
>
> Is not able to accept instructions from supervisors and interact with coworkers and the public without accommodations due to depressive symptoms and difficulty being around people. She is deemed to be moderately impaired.
>
> Is not able to maintain regular attendance in the workplace without accommodation due to depression and pain symptoms. She is deemed to be moderately restricted.
>
> Is not able to handle normal work related stress from a competitive work environment without accommodations.
>
> Her depressive symptoms will impact claimant's ability to handle work related stress. She is deemed to be moderately restricted.

AT 361.

The court now turns to the ALJ's review of the mental health evidence. First, the ALJ found plaintiff to have only mild restriction in activities of daily living. AT 19. In addition to Dr. Odipo's findings, the ALJ cited plaintiff's December 2013 report that she "is able to do light house work, including feeding her cats, making simple meals, doing the dishes, vacuuming and laundry, and although she reported some difficulty performing these activities and her personal care, she reported only physical problems." AT 19, citing AT 226-234, 365. Based on Dr. Odipo's assessment, the ALJ found plaintiff to have moderate difficulties in social functioning, concentration, persistence, or pace. AT 19, citing AT 360-361.

The ALJ noted that no records indicated that plaintiff had experienced episodes of decompensation, hospitalizations or emergency treatment for her mental impairment. AT 19.

> Additionally, the claimant's allegations of disabling depression are not supported by the medical record. The only evidence of mental health treatment in the record is for a short period from March to June 2014, when the claimant received therapy from Michelle Irish. (Exhibit 7F.) She diagnosed a post-traumatic stress disorder and a rule out depressive disorder (Id. at 12). On mental status examinations, Ms. Irish observed that the claimant had good eye contact, clear speech, euthymic mood, good memory, and normal thought processes, and no delusions, auditory hallucinations, or suicidal/homicidal ideation (Id. at 8, 9, 10, 11).

AT 22, citing AT 382-387.[4]  In fact, the record contains numerous normal mental status examinations.  AT 419, 473, 475-476, 478-479, 481-483, 487-488, 494-495, 504-505.

The ALJ next summarized Dr. Odipo's findings of February 2014, including his diagnosis of major depressive disorder and alcohol abuse and his assigned GAF of 60.  AT 22.  "Based on the opinion of Dr. Odipo and giving the claimant the benefit of the doubt," the ALJ concluded "that the claimant has a 'severe' major depressive disorder, but based upon the limited evidence of mental health treatment, [does] not find sufficient evidence that she suffers from disabling mental symptoms."  AT 22.

In the section of the opinion challenged by plaintiff, the ALJ discounted certain functional assessments by Dr. Odipo:

> Lastly, consultative evaluator Dr. Odipo opined that the claimant is able to adequately perform one or two step simple repetitive tasks, but is not able to adequately perform complex tasks without accommodations due to depressive and pain symptoms.  Further, Dr. Odipo stated both that the claimant is not able to accept instructions from supervisors and interact with coworkers and the public without accommodations, but also stated she was deemed to be moderately impaired.  Similarly, he stated both that the claimant is not able to maintain regular attendance in the workplace without accommodations, and not able to handle normal work related stress from a competitive work environment without accommodations, but also that she is deemed moderately restricted in these areas.  The undersigned only gives some weight to Dr. Odipo's opinion because as noted by the DDS medical consultants, it is internally inconsistent.  While stating that the claimant was not able to accept instructions or interact with coworkers and the public, he also stated that she was only moderately impaired, and while stating that the claimant is not able to maintain regular attendance or handle normal work related stress, he again stated that the claimant was only moderately restricted.  Moreover, the very limited evidence of mental health treatment and his own observations of only mild objective findings on mental status evaluation undermines Dr. Odipo's opinion.

AT 23 (record citations omitted).

As to the agency medical consultants, the ALJ noted that they "opined that there was insufficient evidence of a 'severe' mental impairment, and rejected the opinion of . . . Dr. Odipo because his opinion contained inconsistencies and assessed that his opinion was an overestimate

---

[4] Plaintiff attended four therapy sessions with Irish, a social worker, after she applied for benefits. AT 382-386.

7

of the severity of the individual's restrictions and limitations based only on a snapshot of the claimant's functioning." AT 23, citing AT 66-67. State agency reviewing psychologist Barbara Moura opined that plaintiff's impairment from an affective disorder was non-severe, with only mild difficulties in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. AT 51. Dr. Moura opined that Dr. Odipo's assessment of moderate limitations was "overly restrictive" in light of plaintiff's functional activities of daily living, lack of mental health history or treatment, and "fairly benign" current mental status examination. AT 51. State agency psychiatrist Dr. M. Salib agreed with this assessment, also finding Dr. Odipo's assessment "overly restrictive" in light of plaintiff's lack of treatment history and mild impairments due to mental health issues. AT 64-65. The ALJ gave these opinions "some weight" but found that the claimant was more limited than the agency consultants found, based on updated medical evidence at the hearing. AT 23.

Plaintiff argues that the ALJ's characterization of Dr. Odipo's opinion as internally inconsistent was not a sufficient reason to reject portions of the opinion. However, in concluding that plaintiff did not suffer from disabling depression, the ALJ also cited plaintiff's almost nonexistent record of mental health treatment, her ability to perform daily activities, two agency doctors' opinions that plaintiff was only mildly impaired due to depression, and the observations of Dr. Odipo and a therapist that plaintiff's mental status appeared largely normal. Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting portions of Dr. Odipo's opinion concerning plaintiff's functional limitations due to depression.

////
////
////
////
////
////
////

8

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. **15)** is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. **16**) is granted; and

3. Judgment is entered for the Commissioner.

Dated: May 9, 2018

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/fox1663.ssi.ckd